FILED

12 NOV 13 AM 11: 01
CLERK
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

KYLE McCLAMMA,

        **Plaintiff**

vs.

CASE NO: 8:12-CV-2557-T-33MAP

U.S. SENIOR PROBATION OFFICER
JOSEPHA MICHELLE REMON,

        **Defendant**

## COMPLAINT

**COMES NOW** Plaintiff, Mr. Kyle McClamma, pro se litigant, against United States Senior Probation Officer Josepha Michelle Remon for her deprivation of his right to property and right to familial association without due process as guaranteed by the United States Constitution. Under the color of law, U.S. Senior Probation Officer Josepha Michelle Remon imposed a residency restriction which was not ordered by the federal court in Mr. McClamma's criminal conviction. As a result of Officer Remon's actions, Mr. McClamma has incurred heavy financial loss, has undergone great emotional stress and mental anguish, and has suffered irreparable damage to his marriage and relationship with his daughter.

## INTRODUCTION

As a pro se litigant, Mr. McClamma respectfully requests this court to construe this complaint liberally and hold it to a less stringent standard than formal pleadings drafted by attorneys; and that if this court can reasonably read this pleading to state a valid claim on which it can prevail, the court should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the

1

litigant's unfamiliarity with pleading requirements. *Haines v. Kerner, 404 U.S. 519, 30 Led2d 652, 92 SCt 594 (1972); Gomez-Diaz v. U.S., 433 F3d 788 (11th Cir. 2005)*

1. **Jurisdiction**

    This complaint is invoked to this court under U.S.C. Title 42 Section 1983 - Civil Action for Deprivation of Rights.

2. **Venue**

    Venue lies in the Middle District of Florida, Tampa Division, as the deprivation of Mr. McClamma's civil rights was committed by U.S. Senior Probation Officer Josepha Michelle Remon in Hillsborough County.

3. **Statute of Limitations**

    Under 42 U.S.C. § 1988, a state's statute of limitations relating to personal injury is applicable to § 1983 litigation. *Wilson v. Garcia, 471 U.S. 261 (1985)* Pursuant to Florida Statute 768.28(14), the statute of limitations for U.S.C. Title 42 Section 1983 is four years. *See also Burton v. City of Belle Glade, 178 F3d 1175 (11th Cir. 1999)* Therefore, this civil rights action is timely.

4. **Official Immunity**

    Because this complaint against Officer Remon is directed toward her actions in an individual capacity, the court may grant her qualified immunity. *Tapley v. Collins, 211 F3d 1210 (11th Cir. 2000)* However, the following requirements must be established for an officer to be granted qualified immunity: (1) the officer must have been performing a discretionary, not mandatory, act; (2) the officer must have acted in good faith; and (3) the officer must have acted within the scope of his or her authority. *City of Lancaster v. Chambers, 883 S.W.2d (Texas 1994)*

5. **Award for Damages**

If the court finds Officer Remon to have been in violation under §1983, she can be held liable for monetary damages based on the evidence that such damages were incurred as a result of her violation of Mr. McClamma's civil rights. *Bivens v. Six Unknown Agents, 403 U.S. 388, 29 Led2d 619, 91 SCt 1999 (1970); Aversa v. U.S., 99 F3d 1200 (1st Cir. 1996); Whitley v. Hunt, 158 F3d 882 (5th Cir. 1998); Lathen v. Dept. of Children and Youth Services, 172 F3d 786 (11th Cir. 1999)* Additionally, if proven, Officer Remon can be held liable for punitive damages° in such case that her conduct is demonstrated to have been reckless and callously indifferent. *"It is sufficient for the plaintiff to show either that the defendant acted...with actual knowledge that he was violating a right secured by the Constitution and laws, or that the defendant acted with reckless disregard of whether he was thus violating such a right." Screws v. United States (325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495)*

## FACTS

1. On January 31, 2006, Mr. McClamma entered a guilty plea for one count of possessing child pornography before Magistrate Gary Jones in Ocala, Florida. Mr. McClamma was placed on bond until sentencing and was permitted to reside with his wife and child without restriction.

---

° Smith v. Wade, 461 U.S. 30 (1983); Newport v. Fact Concerts, 453 U.S. 247, 269-70 (1981)(holding that punitive damages under Section 1983 are not available against a governmental entity but only against the responsible officials sued in their individual capacity)

3

2. On September 20, 2006, Mr. McClamma was sentenced by U.S. District Judge William Terrell Hodges of the Middle District Court of Florida, Ocala Division, to federal prison for 36 months followed by lifetime supervised release. Among the conditions of supervised release imposed by the sentencing court, none contained any directive regarding a residency restriction. (Exhibit A)

3. Mr. McClamma was a legal home owner of 2202 Towering Oaks Circle in Seffner, Florida. (Exhibit B) This home was valued at $195,000. (Exhibit C, item 14)

4. Mr. McClamma was forced to secure alternative housing arrangements which included a $28,864.36 down payment and $800 per month to reside at 8005 Riverwood Estates Place in Riverview, Florida.

5. In accordance with § 350.10.10 of the Guide to Judiciary Policy, Volume 8E, Mr. McClamma's Risk Prediction Index score was a **1** which placed him in the low risk category.

6. Mr. McClamma was released from prison on April 29, 2009, and reported to Officer Remon on May 1, 2009. In that meeting, which the wife of Mr. McClamma attended, Ms. Remon gave permission for Mr. McClamma to have contact with his daughter pursuant to a condition of supervised release that gave Officer Remon the discretion to grant or deny contact with minors.

7. On May 7, 2009, U.S. Probation's contracted sex offender treatment provider, Dr. Leo Cotter, conducted the required sex offense-specific evaluation of Mr. McClamma prior to entering the treatment program. In Dr. Cotter's evaluation, he cites Mr. McClamma in the low risk category with a re-offense rate of 4.4%. (Exhibit D, pg. 2)

8. In August 2009, Mr. McClamma entered individual counseling with B. Kerry Brown, LCSW, to address the anxiety and stress caused by the alienation he was enduring from being prohibited to live with his family. The cost for these services is $100 per session.

9. On October 21, 2009, Mr. McClamma met with Officer Remon in the presence of Dr. Leo Cotter to discuss lifting the residency restriction. Officer Remon refused to permit Mr. McClamma to reside in his home with his family.

10. On November 1, 2009, in Dr. Cotter's monthly treatment report to Officer Remon, he states that Mr. McClamma is *"experiencing a high level of stress related to his family and marriage."* (Exhibit E)

11. On November 6, 2009, Mr. McClamma's wife filed for dissolution of marriage which became ordered on November 16, 2010. (Exhibit C)

## ARGUMENT

Under the color of law, U.S. Senior Probation Officer Josepha Michelle Remon imposed a residency restriction not ordered by the sentencing court in Mr. McClamma's criminal conviction. Officer Remon's actions violated Mr. McClamma's constitutionally protected right to property which was his home, and his fundamental right to familial association[1] by prohibiting him from living with his family without due process. ***Armstrong v. Manzo, 380 U.S. 545, 552, 14 Led2d 62, 85 SCt 1187 (1965) Citizens must be afforded due process before deprivation of life, liberty, or property.***

---

[1] Hanson v. Dane County, Wis., 608 F3d 335 (7th Cir. 2010) "Familial relations" are fundamental; Martin v. Shawano-Gresham School Dist., 295 F3d 701 (7th Cir. 2002) The right to familial relations is a fundamental right protected by the constitution.

The deprivation of Mr. McClamma's right to property and right to live with his family became ripe on April 29, 2009 and continued until the Circuit Court of the Thirteenth Judicial Circuit for Hillsborough County Family Law Division ordered the dissolution of marriage between Mr. McClamma and his wife on November 16, 2010. In that order, the court awarded the marital home to the wife. (Exhibit C, item 12)

In March 2009, approximately six weeks prior to his release from Coleman Federal Prison, Mr. McClamma provided his unit resource officer, Ms. Rivers, with his home address to which he would be residing with his wife and 2 year-old daughter; 2202 Towering Oaks Circle Seffner, Florida 33584. Approximately three weeks prior to his release from prison, Mr. McClamma was informed by the unit resource officer that U.S. Senior Probation Officer Michelle Remon was prohibiting him from residing in his home with his family.

Mr. McClamma stated his objection, but was informed that he would not be released from prison unless Officer Remon approved his residence. Therefore, Mr. McClamma was forced to make other housing arrangements to satisfy Officer Remon's directive.

Mr. McClamma was released from prison on April 29, 2009, and reported to Officer Remon on May 1, 2009. In that meeting, which the wife of Mr. McClamma attended, Officer Remon permitted contact between Mr. McClamma and his daughter. Officer Remon's discretionary authority to either grant or deny contact between Mr. McClamma and his daughter was authorized by a court ordered supervised release condition that required permission from the probation officer to have contact with anyone under the age of 18.

6

It is reasonable to conclude that Officer Remon's decision to permit contact between Mr. McClamma and his daughter was appropriately determined by her assessment of Mr. McClamma's case history and background pursuant to § 320.30 in the Guide to Judiciary Policy, Volume 8E, which would have concluded the following:

1. Mr. McClamma's offense was a non-contact offense without a history of inappropriate contact with minors[2].

2. Judge William Terrell Hodges had affirmed in his statement of reasons for a downward departure at sentencing that Mr. McClamma "*has no prior criminal history, especially any history of predatory pedophilia*" and that "*there is little likelihood of recidivism*". (Exhibit F)

3. At the plea hearing, the sentencing court had permitted Mr. McClamma unrestricted contact with his child while awaiting sentencing. This came at the government's request and was without objection from the court. (Exhibit G, pgs 2, 9)

4. The four professional psychiatric evaluations provided to the sentencing court in 2006 had concluded Mr. McClamma to be of little to no risk of committing an actual contact offense especially since there was no history of inappropriate conduct toward anyone of any age. (Exhibit H)

5. The report issued to the sentencing court by U.S. Pre-trial Services Officer Donna Weibe did not indicate any concern regarding Mr. McClamma having contact with his daughter.

---

[2] U.S. v Apodaca, 641 F.3d (9th Cir. 2011) Current empirical literature casts serious doubt on the existence of a substantial relationship between the consumption of child pornography and the likelihood of a contact sexual offense against a child. The consumption of child pornography alone does not seem to represent a risk factor for committing hands-on sex offenses.

6. U.S. Probation Officer Richard Svendsen's pre-sentence investigation does not declare a need or an opinion that the sentencing court impose any restriction regarding contact between Mr. McClamma and his daughter. (Exhibit I)

7. U.S. Probation's sex offender treatment provider, Dr. Leo Cotter, confirmed in his evaluation of Mr. McClamma that he was a low risk offender with a recidivism rate of 4.4% before even entering treatment. (Exhibit D, page 2)

8. In accordance with § 350.10.10 of the Guide to Judiciary Policy, Volume 8E, Mr. McClamma's Risk Prediction Index score was a **1** which placed him in the low risk category. Had Officer Remon not prohibited Mr. McClamma from residing with his family, the RPI score would have been lower because one of the elements identified with reduced risk is an offender living with a spouse and family.

Therefore, Officer Remon's directive to prohibit Mr. McClamma from residing in his home with his family not only defied the federal court's sentencing orders, the prior recommendations of the U.S. government, the findings of U.S. Probation Officer Svendsen, the report from Pre-trial services Officer Wiebe, and the evaluations of five mental health professionals, but her actions were also incongruent with her own decision to permit contact between Mr. McClamma and his daughter. Furthermore, Officer Remon's actions were disproportionate to the "Principles of Good Supervision" outlined in § 170(b) in the Guide to Judiciary Policy, Vol. 8E, and she failed to request that the court add or modify Mr. McClamma's supervised release conditions to include a residency restriction pursuant to § 320(c) which would have afforded Mr. McClamma the opportunity for due process.

Most notably, Officer Remon clearly acted outside the scope of authority in that the conditions of supervised release are a part of the sentence imposed by the court. *A probation officer may not decide the nature or extent of the punishment imposed upon a probationer, since under our constitutional system, the right to impose the punishment provided by law is judicial*". **Ex Parte U.S. (Killits), 242 U.S. 27, 41(1916); See also U.S. v. Stephens, 424 F.3d 876, 881 (9th Cir. 2005 )** Had the sentencing judge in Mr. McClamma's case delegated to Officer Remon the judicial authority to modify the terms of supervised release at her discretion, he would have been in violation of Article III of the U.S. Constitution.

The sentencing judge in Mr. McClamma's case complied with U.S.S.G. §5F1.5 which implements Congress' mandate set forth in 18 U.S.C. §3583(d). This statute only authorizes the <u>court</u> to impose supervised release conditions, and restricts its authority to do so by the factors enumerated in §3583(d)(1),(2). In §3583(d)(3), the court may impose <u>discretionary</u> conditions of probation outlined in §3563(b). One such restriction is §3563(b)(13) which permits the probation officer the discretion to grant or deny one's place of residence. In Mr. McClamma's sentence, the court chose not to impose this discretionary condition.

.Therefore, Officer Remon's actions which violated Mr. McClamma's right to property and right to live with his family lacked the discretionary authority that can only be granted by the court. **City of Pharr v. Ruiz, 944 S.W.2d 709(Tx. Cr. App. Corpus Christi, 1977) Holding that an officer cannot be performing a discretionary act when there is no option to disregard one's constitutional rights.**

9

In ***U.S. v. Timothy Eric Wolf Child, No. 11-30241, slip op. (9th Cir. 2012)*** the defendant was convicted of attempted sexual abuse with an intoxicated and unconscious minor. As a part of Wolf Child's sentence, the district court imposed a supervised release condition which prohibited him from residing in the home, residence, or be in the company of any child under the age of 18 including his own offspring. Upon appeal, the Ninth Circuit concluded that prohibiting one's ability to reside with their family is a fundamental right to familial association which is a particularly significant liberty interest. Subsequently, the Ninth Circuit vacated this condition after finding that the district court <u>abused its discretion</u> and <u>procedurally erred</u>. Furthermore, the Ninth Circuit stated that this condition was <u>substantively unreasonable</u> and <u>overbroad</u>.

The Wolf Child case demonstrates that the district court is held to a high level of scrutiny when it attempts to impose a restriction that would prohibit a defendant from residing in his home with his/her family. For Officer Remon to have presumed authority over a significant constitutional matter which the district court in Mr. McClamma's case did not grant her, demonstrates her blatant disregard toward the authority of the court.

On May 26, 2011, Mr. McClamma provided Officer Remon a written request to clarify her authority and intent for imposing a restriction which prohibited him from residing in his home with his family. (Exhibit J) On June 2, 2011, Ms. Remon admitted to Mr. McClamma during a telephone conversation that his sentencing orders did not include a residency restriction which she in fact imposed. Such acknowledgement demonstrates her awareness and understanding that she had violated a clearly established constitutional right which a reasonable person would have known. ***Tellier v. Fields, 280 F3d 69 (2nd Cir. 2001) Qualified immunity does not act as a shield for individuals who***

10

*knowingly violate the law.*

The impact of Officer Remon's actions extends beyond Mr. McClamma's right to live with his family[3]. The right of his wife to live with her husband and the right of their daughter to live with her father were also violated without due process. ***Lowery v. County of Riley, 522 F3d 1086 (10th Cir. 2008) A child has a constitutionally protected due process liberty interest in a relationship with her parent. See also Wooley v. City of Baton Rouge, 211 F3d 913 (5th Cir. 2000)***

It is clearly evident that Mr. McClamma's wife intended to remain in the marriage by her supportive testimony at his sentencing (Exhibit K, excerpt) and her frequent contact throughout his 31 month incarceration. She also testified in the divorce hearing on October 6, 2010 (Exhibit C, item 8) that:

1. She expected that her husband would be living with her and their daughter upon his release from prison.

2. Officer Remon was responsible for prohibiting Mr. McClamma from residing with the family.

The evidence in this case does not support a plausible defense for Officer Remon to have acted in good faith when she imposed a residency restriction which deprived Mr. McClamma of his right to his home and right of familial association without due process.

---

[3] "If a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest, there would be little doubt that the State would have intruded impermissibly on 'the private realm of family life which the state cannot enter." **Smith v. Organization of Foster Families, 431 U.S. 816, 862-63 (1977) (Justice Stewart concurring), cited with approval in Quillion v. Walcott, 434 U.S. 246, 255 (1978)**

Even so, the determination of her intent to have acted in good faith is a burden that she would have to prove to state a claim for relief in this matter. ***Gomez v. Toledo, 446 U.S. 635 (1980)***

Officer Remon's actions deliberately alienated Mr. McClamma from his family which caused the dissolution of a 9 year marriage, and has permanently diminished the contact between Mr. McClamma and his daughter[a]. Officer Remon's reckless and callously indifferent conduct when depriving Mr. McClamma his constitutional rights have resulted in destructive and permanent consequences which are grounds for punitive damages in this case.

At this time, Mr. McClamma has no reason to believe that any other individuals were a party to Officer Remon's decision to impose a residency restriction which deprived Mr. McClamma of his constitutionally protected right to property and his right to familial association without due process. However, if testimony or evidence is discovered to suggest otherwise, Mr. McClamma respectfully requests the court to consider modifying this civil liability action to a Title 42 of the U.S. Code, Section 1985- Conspiracy to Interfere with Civil Rights.

---

[a] Kipps v. Caillier, 205 F3d 203 (5th Cir. 2000) - Parent/child relationship lies at the heart of constitutionally protected familial associations; Gruenke v. Seip, 225 F3d 290 (3rd Cir 2000) - Parents have a due process right to raise their children without undue state interference.

## CONCLUSION

Mr. McClamma is required to prove his civil case by a preponderance of evidence. Furthermore, while Mr. McClamma bears the burden of negating qualified immunity in a § 1983 action, all inferences are to be drawn in his favor. ***Brown v. Callahan, 623 F3d 249 (5th Cir. 2010)*** The evidence and facts outlined in this complaint meet this burden.

It has been demonstrated that Officer Remon acted outside the scope of her authority, lacked the discretionary authority from the court, and did not act in good faith. Furthermore, she violated Mr. McClamma's clearly established constitutional rights which a Senior Probation Officer should have reasonably known.

The result of Officer Remon's deprivation of Mr. McClamma's constitutionally protected right to property and his right to familial association without due process forced Mr. McClamma to secure other housing arrangements. This subjected him to unnecessary costs, resulted in the loss of his home as a financial asset, caused the dissolution of a 9 year marriage, and has permanently diminished the contact between Mr. McClamma and his daughter. Mr. McClamma has also suffered additional financial loss by incurring heavy legal costs resulting from the divorce litigation, and costs for mental health treatment from the distress and mental anguish of these circumstances×.

Finally, Officer Remon's conduct in this case has been demonstrated to be reckless and callously indifferent toward Mr. McClamma by deliberately alienating him from his family.

---

× Ferrill v. Parker Group, Inc., 168 F3d 468 (11th Cir. 1999) - A plaintiff bringing a civil rights claim may be compensated for intangible, psychological injuries as well as financial, property, or physical harms

## REQUEST FOR RELIEF

Compensatory Damages

Mr. McClamma requests the court to award $195,000 for the loss of his home as an asset, $35,264.36 for alternative housing arrangements, $93,719.49 for attorney fees resulting from divorce litigation (Exhibit L), and $12,321.50 for mental health counseling. (Exhibit M)

Punitive Damages

Mr. McClamma requests the court to award $1.34 million to serve as both a deterrent and punishment for Officer Remon's reckless and callously indifferent conduct in this case, and requests the court to grant any other relief it deems necessary. *State Farm Mut. Auto. Ins. Co v. Campbell, 538 U.S. 408 (2003) The 4:1 ratio between compensatory damages and punitive damages is not only constitutionally permissible but is a legal benchmark as an equitable standard for determining punitive damages.*

DATED this 13th day of November, 2012.

Respectfully Submitted,

Kyle E. McClamma
8005 Riverwood Estates Place
Riverview, Florida 33569
Telephone: (813)240-0995
*Pro se Litigant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the Clerk of the Circuit Court this 13th day of November, 2012 to:

United States Federal Courthouse
801 North Florida Avenue
Tampa, Florida 33602